# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| KENNETH TELFAIR NEWSOME, II, )<br>    )<br>    Plaintiff,        )<br>    )<br>v.        )<br>    )<br>PRISON HEALTH SERVICES, INC.; )<br>DR. LINDSEY JACKSON; NURSE )<br>JANICE SIMMONS; and NURSE )<br>SANDRA McIVORY,        )<br>    )<br>    Defendants.[1]        ) | Case No.  CV405-042 |

# REPORT AND RECOMMENDATION

Plaintiff Kenneth Newsome filed this 42 U.S.C. § 1983 action alleging that the defendant prison officials denied him necessary dental care in violation of the Eighth Amendment.  (Docs. 1 & 10.)  Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

---

[1] The Court has amended the caption to reflect the full names of the defending parties.  All subsequent filings shall conform.

Procedure.[2] (Docs. 67, 68, 76.) Newsome opposes each defendant's motion. (Docs. 71, 72, 73, 74.) For the reasons that follow, defendants' motions should be DENIED.

## I. BACKGROUND

Newsome's allegations arise from the dental care that he received in the Chatham County Detention Center ("CCDC" or "jail") between August 2004 and June 2006. (Doc. 73 (hereinafter Newsome Decl.)[3] ¶ 6.) Specifically, he contends that Nurse Janice Simmons, Nurse Sandra McIvory, and Dr. Lindsey Jackson were deliberately indifferent to his serious dental needs and that their employer, Prison Health Services, Inc. ("PHS"), knew about and was responsible for their conduct and further contributed to his suffering through a policy of delaying his access to necessary dental care. (Docs. 1 & 10.)

---

[2] The Court previously awarded summary judgment to the nurses and dismissed the complaint as to Dr. Jackson and Prison Health Services, Inc. On appeal, the Eleventh Circuit vacated that judgment and remanded for further proceedings. *Newsome v. Chatham County Det. Ctr.*, 256 F. App'x 342 (11th Cir. 2007).

[3] Unsworn declarations under penalty of perjury pursuant to 28 U.S.C. § 1746 are admissible as evidence in opposition to a motion for summary judgment. *See, e.g., Hameed v. Pundt*, 964 F. Supp. 836, 840-41 (S.D.N.Y. 1997); *McNeal v. Macht*, 763 F. Supp. 1458, 1461 (E.D. Wis. 1991) ("when a pro se plaintiff properly executes . . . a declaration in conformity with 28 U.S.C. § 1746, the plaintiff's statement . . . is transformed from 'mere allegations' . . . into 'specific facts' as in an evidentiary affidavit.").

In October 2004, Newsome began to file dental treatment request forms complaining of pain from tooth #13, located on the upper left-hand side of his mouth. (Newsome Decl. ¶ 8.) He told his unit nurse, Nurse Simmons, that he was in severe pain, and she initially provided him 12 Motrin tablets and scheduled him for a dental appointment. (Doc. 33, Ex. A at 63.) But when he later asked for more pain medication, she allegedly laughed at him and told him "to get out of her face." (Newsome Decl. ¶ 8.) Despite her previous comment, she later dispensed him 10 Tylenol tablets on October 25, 2004. (Doc. 33, Ex. C.) He submitted another medical request the next day, this time complaining of fillings falling out and a cracked tooth. (Newsome Decl. ¶ 12.) Simmons provided him with another ten Tylenol tablets on October 27, 2004. (Doc. 33, Ex. C.)

On October 31, 2004, Newsome submitted a dental request form noting that he was suffering from severe pain (accompanied by headaches, earaches, and throat pain) and was unable to eat, which he indicated had caused him to lose 15 pounds. (Newsome Decl. ¶ 13.) Two days later, he was taken to the jail's emergency medical area based on those complaints.[4]

---

[4] The Court notes that Newsome's assertion of sudden and drastic weight loss appears to be contradicted by the medical records. On September 22, 2004, during a

(*Id.* ¶ 15; doc. 33, Ex. A at 65.)  The emergency staff gave him Tylenol, and a  few days later he was given twelve Motrin 200mg tablets.  (Doc. 33, Ex. A.)

On November 11, 2004, Newsome saw Dr. Jackson, who worked for PHS as a dentist at the Chatham County jail.  (*Id.*; doc. 70 (hereinafter Jackson Aff.) ¶ 4.)  Dr. Jackson determined that Newsome's overall dental condition was poor, consistent with class III periodontitis.  (Jackson Aff. ¶ 8.)  He found that Newsome had a root canal and crown at tooth #13, and both had failed, resulting in a severe infection at the root of the tooth that had developed into a periapical abscess.[5]  (*Id.* ¶¶ 9, 17.)  The infection had to be treated before further corrective dental work could be performed.

---

physical assessment, the medical staff noted that Newsome weighed 147 pounds.  (Doc. 33, Ex. A at 81.)   The medical records reflect that he still weighed 147 pounds on October 25, 2004, about seven days before he complained of the 15-pound drop in weight.  (*Id.* at 13.)  On October 31, the emergency care nurse did not take an actual weight measurement but simply noted that Newsome "states [he] lost 15 lbs." (*Id.* at 65.)  A weight reading in the record  taken on February 15, 2005 reflects that he had gained three pounds despite the tooth extractions and complaints of severe pain.  (*Id.* at 13.)  By March 22, 2004, he had gained another 2 pounds.  (*Id.* at 14.)  But "[w]hile it is true that Newsome's medical records do not support the version of the facts he presents in his affidavit, all this means is that there is a conflict in the evidence, which [this Court] must resolve at the summary judgment stage in Newsome's favor."  *Newsome*, 256 F. App'x at 346.   *See also Farrow v. West*, 320 F.3d 1235, 1244 n. 16 (11th Cir. 2003).

[5] Dr. Jackson later defines "periapical abscess" as "an infection at the root of the tooth." (Jackson Aff. ¶ 17.)

4

(Newsome Decl. ¶ 16.) Dr. Jackson prescribed antibiotics and pain medication and scheduled a followup appointment for an extraction. (Jackson Aff. ¶¶ 10, 11.)

Newsome returned to Dr. Jackson six days later for the extraction. (Newsome Decl. ¶ 17; Jackson Aff. ¶¶ 12-15.) But according to Newsome, Jackson reversed course and refused to extract the tooth, indicating that Newsome should have the tooth repaired by an outside endodontist at his own expense. (Newsome Decl. ¶ 17.) Jackson, on the other hand, states that Newsome refused to consent to an extraction, electing instead to keep the tooth and have it repaired by an outside dentist upon his release from custody.[6] (Jackson Aff. ¶¶ 13-15.)

In late December 2004 and early January 2005, Newsome submitted several more dental request forms regarding dental pain. (Newsome Decl. ¶¶ 19-20.) Each of these complaints related to pain originating from tooth #4, which is on the upper right side of his mouth, rather than tooth #13, which is on the upper left. (Doc. 74, Ex. 6; Jackson Aff. ¶¶ 16-17.) On

---

[6] Newsome states that he was confined at the jail as a pretrial detainee "from August 2004 through June 2006 continuously." (Newsome Decl. ¶ 6.) He appears to have remained in custody as a convicted inmate ever since. *See Newsome v. United States*, CV408-004 (filed Jan. 15, 2008) (Newsome's federal habeas action).

January 18, 2005, Dr. Jackson examined Newsome, found that he now had an infection at the root of tooth # 4, and again prescribed antibiotics and pain medication. (Jackson Aff. ¶¶ 16-18; Newsome Decl. ¶ 21.) Jackson contends that he scheduled a followup appointment after the visit for tooth # 4 but states Newsome did not show up. (Jackson Aff. ¶¶ 18-19.) Newsome denies that any followup was scheduled, prompting him to submit yet another request for dental care. (Newsome Decl. ¶ 21.)

A few weeks later, Newsome submitted a further dental request form regarding his dental pain. (Doc. 74, Ex. 9; Newsome Decl. ¶ 23.) Dr. Jackson saw Newsome on February 21, 2005. (Newsome Decl. ¶ 24.) This time, Newsome complained of pain from yet another tooth, tooth #30, a lower-right molar. (Jackson Aff. ¶ 20.) Jackson took another X-ray and discovered a "deep carious lesion" (i.e., a very extensive cavity) and another infection.[7] (*Id.*) He again prescribed antibiotics and pain killers and scheduled Newsome for an extraction. (*Id.* ¶¶ 21-22.) On March 4, 2005, Dr. Sams, another PHS-contract dentist, extracted tooth # 30. (*Id.* ¶ 22;

---

[7] Newsome attributes this dental infection to Jackson's delay in providing adequate dental care. (Newsome Decl. ¶ 24.)

Newsome Decl. ¶ 25.) Dr. Sams prescribed eleven doses of Motrin 600mg for pain. (Doc. 67, Ex. B.)

After the extraction, Newsome submitted more dental request forms regarding further dental pain. (Newsome Decl. ¶ 26.) The next day, March 8, 2005, he asked to speak with his new unit nurse, Nurse McIvory. (*Id.* ¶ 27.) McIvory allegedly "laughed at [his] pain and made a insulting comment, insinuating drug abuse." (*Id.*) Newsome states that McIvory refused to give him any further pain medication and told him to file a grievance if he disagreed with her decision.[8] (*Id.*)

On the tenth and eleventh of March, Newsome submitted another battery of grievances regarding dental pain. (*Id.* ¶¶ 10-11.) Despite her earlier refusal, Nurse McIvory dispensed Newsome some more Tylenol. (Doc. 67-2 at 6.) On the evening of March 11, 2005, Newsome states that he passed out due to a dental infection, requiring the detention center's medical personnel to make an emergency call to his cell. (Newsome Decl. ¶ 30.) They provided him with Tylenol for pain. (*Id.*) Newsome visited Dr.

---

[8] In an earlier affidavit, Newsome stated that Nurse McIvory gave him two Tylenol tablets for pain on March 8, 2005, and that the refusal occurred on March 11, 2005. (Doc. 39 ¶¶ 13-14.) The precise dates make no difference to the Court's analysis, however.

Jackson for a post-extraction followup on March 24, 2005, and Jackson noted that Newsome was healing well. (Jackson Aff. ¶¶ 23-24.) On May 7, 2006, over a year later, Dr. Sams finally extracted tooth #13 after it "cracked and broke."[9] (*Id.*; Newsome Decl. ¶ 31.)

## II.  GOVERNING STANDARDS

### A.  Summary Judgment Standard

Summary judgment serves to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 advisory committee's note, cited in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). It is appropriate only when the pleadings, depositions, and affidavits submitted by the parties indicate no genuine issue of material fact and show that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A court must view the evidence and any inferences that may be drawn from it in the light most favorable to the non-moving party. *Mercantile Bank & Trust Co., Ltd. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985).

---

[9] In addition, Dr. Sams extracted tooth #18, located on the lower jaw, in March 2006. (Doc. 68-2 at 7.)

The party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Such a showing shifts to the non-moving party the burden to go beyond the pleadings and present affirmative evidence showing that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986); *Thompson v. Metro. Multi-List, Inc.*, 934 F.2d 1566, 1583 n.16 (11th Cir. 1991). "Factual disputes that are irrelevant or unnecessary will not be counted," *United States v. Gilbert*, 920 F.2d 878, 883 (11th Cir. 1991) (citation omitted), and a mere scintilla of evidence supporting the non-moving party's position will not fulfill his burden. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). "The evidence of the nonmovant is to be believed," *Anderson*, 477 U.S. at 255, and thus the Court may not make credibility choices or weigh conflicting evidence at the summary judgment stage. *Reese v. Herbert*, 527 F.3d 1253, 1271 (11th Cir. 2008).

## B.   Deliberate Indifference

The Eighth Amendment's proscription against cruel and unusual punishment prevents prison personnel from subjecting an inmate to "acts

or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."[10] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and subjective inquiry." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003); *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995). "First, a plaintiff must set forth evidence of an objectively serious medical need." *Farrow*, 320 F.3d at 1243; *Taylor*, 221 F.3d at 1258; *Adams*, 61 F.3d at 1543. "Second, a plaintiff must prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Farrow*, 320 F.3d at 1243; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999); *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999). And as is true in all tort actions, the plaintiff must also establish that the defendant's

---

[10] As Newsome was a pre-trial detainee at the time of these incidents, this action technically arises under the Fourteenth Amendment. Newsome's custodial status is of no significance to the Court's analysis, however, for it is well settled that "the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner." *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Hamm v. DeKalb County*, 774 F.2d 1567, 1572-74 (11th Cir. 1985) ("states may not impose on pretrial detainees conditions that would violate a convicted prisoner's eighth amendment rights").

indifference caused his injury. *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007).

A prisoner's medical need is considered "serious" if he establishes that it is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"[11] *Farrow*, 320 F.3d at 1243 (citations omitted). The objectively serious need "must be 'one that, if left unattended, pos[es] a substantial risk of serious harm.'" *Id.* (citation omitted). Under the subjective component, "an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *McElligott*, 182 F.3d at 1255 (quoting *Lancaster*, 116 F.3d at 1425)); *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989) ("knowledge of

---

[11] Recently, the Eleventh Circuit remarked that this objective standard is one of "*at least* two different tests for whether a medical need is serious." *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008) (Carnes, J.) (emphasis added). Another measure of seriousness "is whether the delay in treating the need worsens it." *Id.* While most circuits agree that a prisoner satisfies the objective component of a § 1983 medical claim by establishing that he has been diagnosed with or obviously exhibits a serious medical condition, other tests for objective seriousness have been proposed. *See, e.g., Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (citing *Guitierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *Young v. Kazmerski*, 266 F. App'x 191, 193 (3d Cir. 2008); *McCarthy v. Place*, 2008 WL 5069039 at *4 (6th Cir. Dec. 2, 2008) (unpublished); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

the need for medical care and intentional refusal to provide that care constitute deliberate indifference"). "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *McElligott*, 182 F.2d at 1255; *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir. 1994); *Brown v. Hughes*, 894 F.2d 1533, 1537-39 (11th Cir. 1990). "A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." *McElligott*, 182 F.3d at 1257.

## III. ANALYSIS

### A. Nurses Simmons and McIvory

In their renewed motion for summary judgment, nurses Simmons and McIvory assert that Newsome's "dental condition was not serious" and that he suffered no "detrimental effect" as a result of the delay in having him

seen by a dentist.[12] (Doc. 67-3 at 5-6.) This is at best a half-hearted argument, for the nurses avoid discussing the evidentiary record and have offered no reasoned argument in support of their contention. Even a cursory review of the record establishes that Newsome suffered from a serious medical need and that his dental problems were treated as such by the nurses themselves.

Newsome states in his initial affidavit that he "continuously told Nurse Simmons about the condition of [his] mouth and that [he] was suffering a great deal of severe pain." (Doc. 39 ¶ 6.) Despite his suffering, he alleges that he was denied pain medications by both nurses. Newsome's declaration repeats the allegation that he informed both nurses that he was suffering from "severe dental pain." (Newsome Decl. ¶¶ 8, 11, 15, 27, 29.) He indicated on one occasion that his dental pain was causing him "extreme headaches, earaches, and pain in [his] throat," which prevented him from eating and had caused him to lose some 15 pounds. (*Id.* ¶¶ 13,15.) On

---

[12] In their original summary judgment motion, the nurses "assumed . . . that Newsome had presented evidence of a serious medical need." *Newsome*, 256 F. App'x at 345. Addressing only the "deliberate indifference" of the nurses, the Eleventh Circuit concluded that Newsome had presented a genuine issue of material fact on the subjective component of his § 1983 medical claim. *Id.* at 345-46. The nurses now for the first time specifically contend that Newsome has not produced evidence showing that he had an objectively serious medical need.

13

another occasion his dental pain was so severe that he "passed out." (*Id.* ¶ 30.) Further, these sworn allegations are supported by the medical records attached to the defendants' summary judgment motion, records which reflect not only that Newsome continually appeared in the clinic complaining of "severe" or "extreme" pain,[13] but also reflect the objective observations of both the nurses and Dr. Jackson that Newsome presented with significant dental problems.[14]

The nurses do not reference or even acknowledge any of this evidence. In asserting that Newsome's medical need was not "serious," the nurses make no mention of Newsome's repeated complaints of severe pain or their own objective observations that Newsome suffered from "decayed and

---

[13] The medical records tendered by the defendants as a composite exhibit (doc. 33) reflect that Newsome made the following complaints to the nursing staff: pp. 98 ("severe pain" on 10/13/04); 72 ("severe tooth aches" resulting from two fillings coming out and a cracked tooth on 10/26/04); 69 ("severe pain" causing pain in his head, ear, and throat on 10/31/04); 65 ("severe" pain radiating to his head, ear, and neck on 11/2/04); 56 (pain level of "6" out of 10 on 12/21/04); 59 ("extreme pain" on 1/2/05); 51 ("severe toothache" on 1/12/05); 43 ("severe pain" on 1/31/05); 45 ("extreme pain" on 2/5/05); 35 ("severe tooth ache" on 3/7/05); 36 ("severe pain" on 3/10/05); 29 ("severe dental pain" and "infection" on 3/11/05).

[14] In examining Newsome, the nurses noted the following objective findings (doc. 33): pp. 42 ("hole" in right molar on 1/3/05); 44 (tooth "cracked [and] decay[ed]"); 45 ("rear teeth decayed and cracked" on 2/7/05); 56 ("decay" in mouth on 12/21/04); 63 ("decayed tooth"); 68 ("decay & filling out" on 11/3/04). Dr. Jackson's notes also reflect these objective assessments: pp. 41 ("grossly decayed" tooth and "irreversible pulpitis"); 66 ("periapical abscessed [sic]").

cracked" teeth, had numerous missing fillings, and was experiencing an overall dental collapse. Even in the face of Newsome's declaration offered in response to their motion for summary judgment, the nurses simply repeat in their reply brief that "the medical evidence does not demonstrate a serious medical need." (Doc. 76 at 2.) As support for this contention, they cite to Dr. Jackson's affidavit (doc. 70-2 ¶ 26), where he opines at one point that "plaintiff Newsome did not suffer from a serious dental/medical need and received sufficient care." (Doc. 67-3 at 13-14.) Nowhere in his affidavit, however, does Dr. Jackson explain *why* Newsome's dental needs were not serious. His pronouncement that Newsome had no serious dental needs is merely conclusory, therefore, and speaks to the ultimate legal issue without explaining the evidentiary foundation for his opinion. "Affidavits . . . setting forth ultimate facts or conclusions of law can neither support nor defeat a motion for summary judgment." *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 295 (11th Cir. 1987). Nor does the Court's independent examination of the medical records lend any support to the defendants' conclusory statement that Newsome's dental needs were not serious.

The undisputed facts of record establish that Newsome had severe and longstanding dental problems at the time he was seen by nurses Simmons and McIvory, including advanced periodontitis, tooth deterioration and decay, cracked and broken teeth, a failed root canal, dental infections, missing fillings, and other problems likely to result in episodes of significant pain. Also, Newsome had just undergone a surgical extraction just before his unhappy encounter with Nurse McIvory, when she "laughed at [his] pain." (Newsome Decl. ¶ 27).

A core principle of Eighth Amendment jurisprudence is that prison or jail officials may not needlessly inflict suffering upon those in their care. *McElligott*, 182 F.3d at 1257. It is universally recognized that a dental problem of whatever nature that results in significant pain qualifies as a serious medical need. *Farrow*, 320 F.3d at 1243-45 (significant pain and weight loss resulting from lack of dentures constituted a serious medical need); *Young v. Kazmerski*, 266 F. App'x 191, 193 (3rd Cir. 2008) (unnecessary pain arising from the denial or delay of adequate dental care is, objectively, a serious medical need); *McCarthy v. Place*, 2008 WL 5069039 at *4 (6th Cir. Dec. 2, 2008) (unpublished) (significant pain and

discomfort arising from failure to treat cavity and toothache constituted serious medical need); *Hartsfield v. Coburn*, 371 F.3d 454, 456 (8th Cir. 2004) (extreme pain resulting from loose and infected teeth constituted a serious medical need); *Stack v. McCotter*, 79 F. App'x 383, 388-89 (10th Cir. 2003) (persistent pain from failure to treat inmate's periodontitis was itself sufficient to establish that his dental need was objectively serious despite fact that he eventually received satisfactory treatment and could show no permanent injury resulting from the delay in treatment); *Chance v. Armstrong*, 143 F.3d 698, 703 (2nd Cir. 1998) ("a cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff . . . .). On this record, Newsome has offered sufficient evidence from which a jury could conclude that he suffered from a serious medical need at the time he sought treatment from nurses Simmons and McIvory.

The nurse defendants further argue that even if Newsome had a serious medical need, he has not presented any evidence that their delay in providing him medical care caused him any "detrimental effect" and they argue that the absence of such causation evidence is "fatal" to his claim.

(Doc. 67-3 at 11.)  They cite to *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994), for the proposition that a prisoner complaining of delay in access to medical treatment "must place underline medical evidence in the record to establish the detrimental effect of the delay in medical treatment."  (Doc. 67-3 at 12.)  This argument is unpersuasive for several reasons.  First, while Newsome does complain about the month-long delay between his initial request for dental treatment and his being seen by a prison dentist, his primary allegation against the nurses concerns their outright *denial* of medical care by "laughing" at his pain and refusing to administer pain medication that would relieve or diminish his suffering.  *See Newsome*, 256 F. App'x at 346 (finding that Newsome's allegations that the nurses had failed to administer needed pain medication created a fact issue as to their deliberate indifference to his serious medical needs).  Thus, this is not strictly a "delay" case.  Further, "[i]n *Hill*, the question was not whether the inmate's medical need was serious, but instead whether [defendant's] four-hour delay in providing medical care constituted denial of medical care." *Farrow*, 320 F.3d at 1245.  Unlike the plaintiff in *Hill*, Newsome is not asserting that his medical need

was life-threatening, requiring immediate or emergency attention, or worsened his underlying medical condition such that *any* delay constituted deliberate indifference. *Id.*; *see Hill*, 40 F.3d at 1188-89 (inmates asserting that delay in treatment exacerbated the medical condition or resulted in a life-long handicap or permanent loss must offer "verifying medical evidence . . . to establish the detrimental effect" of the delay). Finally, drawing all reasonable inferences from the medical records in his favor, Newsome has shown that the nurses' refusal to administer pain medication had the "detrimental effect" of needlessly forcing him to endure intense pain. It is well established that "'the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Farrow*, 320 F.3d at 1242-43 (citations omitted). Thus, severe pain resulting from the willful denial of (or delay in providing) necessary medical care offends the Constitution, even without any showing that plaintiff's underlying medical condition was worsened or exacerbated. And to the extent Newsome's claim against the nurses is interpreted as a "delay" case, Newsome has presented sufficient evidence that he suffered the detrimental effect of severe pain as a consequence of the nurses'

indifference to his medical needs. The nurses are not entitled to summary judgment on their "no causation" theory, therefore.

## B.   Dr. Jackson

In his motion for summary judgment, Dr. Lindsey Jackson contends that Newsome's claims against him "are completely unfounded and clearly contradicted by the medical evidence of record." (Doc. 68-3 at 3.) When he saw Newsome on November 11, 2004 (based primarily on Newsome's complaint that tooth # 13 was hurting), Jackson determined that Newsome's "oral condition was poor" and that he suffered from "class III periodontitis." (Jackson Aff. ¶¶ 7-9.) Dr. Jackson x-rayed Newsome's mouth and informed him that his prior root canal at tooth # 13 had failed and that he had an infection at the root of that tooth (a "periapical abscess"). (*Id.* ¶¶ 9, 17.) Dr. Jackson prescribed Motrin 600 mg and Amoxocillin and scheduled Newsome to return for an extraction on November 17, 2004. (*Id.* ¶¶10-12.)

According to Jackson, when Newsome returned for the scheduled extraction he advised that he preferred to keep the tooth rather than having it pulled. (*Id.* ¶¶ 12-13.) In response, Dr. Jackson states that he

gave Newsome "the following options: 1) have the tooth extracted, 2) find someone to put money on his book in order to arrange for him to go to an endodontist, or 3) try and wait until he got out of jail to get it done." (*Id.* ¶ 14 (emphasis added).) Jackson states that Newsome indicated that he would wait until he was released from jail to fix his tooth. (*Id.* ¶ 15.)

Newsome has provided a very different account of his treatment by the prison dentist. Newsome first complained of "severe dental pain" from tooth # 13 on October 13, 2004 but points out that he was not seen by a dentist until November 11, 2004. (Newsome Decl. ¶¶ 8-9.) As a result of that month-long delay, Newsome developed a dental infection that further delayed his treatment, for the infection had to be addressed before Dr. Jackson could schedule the extraction. (*Id.* ¶¶ 9, 16.) When Newsome appeared for the scheduled extraction on November 17, 2004, Dr. Jackson "recommended" a root canal rather than an extraction of tooth # 13. (*Id.* ¶ 17.) According to Newsome, when he advised Dr. Jackson that his pain was so severe he needed immediate treatment, "*Dr. Jackson arbitrarily decided on his own not to extract the tooth or handle the root canal.*" (*Id.* (emphasis added).) Newsome specifically denies that

he refused any offered dental treatment, pointing out that he never signed an "Inmate treatment refusal form," as required by institution policy. (*Id.* ¶ 18.)

At the summary judgment stage, this Court is precluded from resolving the clear factual dispute between Dr. Jackson and Newsome. Crediting Newsome's version of the facts, as the Court must, it is clear that a jury could reasonably find that Dr. Jackson was deliberately indifferent to Newsome's serious medical need, thus precluding summary judgment in his favor. *Anderson*, 477 U.S. at 250-51. Although Jackson (like the nurses) denies that Newsome had a serious medical need, the record establishes otherwise: Newsome was suffering severe pain from a failed root canal and was told by Jackson that he needed either an extraction or another root canal. But according to Newsome, Jackson refused to perform either procedure, leaving Newsome no choice but to linger in pain, for there is no contention that Dr. Jackson believed that Newsome (who is proceeding IFP here) was able "to find someone to put money on his book" sufficient to pay for the services of a free-world endodontist. (Newsome Decl. ¶ 14.)

Dr. Jackson argues that while Newsome had some dental problems, his condition "was stable and he was not at risk of serious bodily injury," and therefore any denial of care did not pose a risk of serious harm. (Doc. 68-3 at 11.) This argument misperceives the recognized standard for evaluating a medical claim. As the Eleventh Circuit and numerous other courts have repeatedly held, a medical need is "serious" if it is one that "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Danley*, 540 F.3d at 1310-11 (noting that "even a tooth cavity" can constitute a serious medical need); *Farrow*, 320 F.3d at 1243 (prisoner's evidence established a serious medical need for dentures, precluding summary judgment for prison dentist who delayed necessary treatment for non-medical reasons). Dr. Jackson himself diagnosed Newsome's dental problem as one requiring either an extraction or a root canal, and nowhere does he dispute Newsome's contention that he was suffering severe pain as a result of this condition.[15] Nor is there any requirement for a prisoner to show objective

---

[15] While Dr. Jackson initially prescribed Motrin as a pain reliever pending the scheduled extraction of tooth # 13, he does not assert that further administration of pain

evidence of pain or establish that the denial or delay of treatment of a painful dental condition resulted in permanent injury or required "'emergency attention.'" *Farrow*, 310 F.3d at 1245; *Stack*, 79 F. App'x at 389 (failure to show permanent injury is not fatal to § 1983 claim that dental staff delayed in treating inmate's severe periodontitis, for "pain itself can be considered substantial harm").

In addition to presenting sufficient facts to create a jury question as to whether he suffered a serious medical need, Newsome has also created an issue of fact as to whether Dr. Jackson exhibited deliberate indifference to that serious medical need. "Deliberate indifference" arises when a prison "official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Interpreting the Supreme Court's cases, the Eleventh Circuit has determined that "'deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.'" *Farrow*, 320 F.3d at 1245 (quoting

killers was an appropriate or effective long-term medical response to the painful dental condition that Newsome presented with. Nor does Jackson indicate that he believed that Newsome could afford to have the failed root canal treated using his own resources.

*McElligott*, 182 F.3d at 1255).  In distinguishing between deliberate indifference and "mere negligence," the Eleventh Circuit has noted that "'an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate.'" *Farrow*, 320 F.3d at 1246 (citation omitted).  "'Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable.'" *Farrow*, 320 F.3d at 1246 (citation omitted).  Not only may even short delays constitute deliberate indifference, "'[d]elayed treatment for injuries that are of a lesser degree . . . may also give rise to constitutional claims.'" *Id.* at 1247 (citation omitted).

A jury crediting Newsome's account of his encounters with Dr. Jackson would be entitled to find that Jackson was deliberately indifferent to Newsome's serious medical needs.  Dr. Jackson was certainly aware that Newsome suffered from a serious dental condition,

for he diagnosed the dental problem himself and knew that Newsome was complaining of significant pain arising from the failed root canal (a complaint that he apparently credited, as he prescribed Newsome a stronger analgesic than the nurses had administered). But while Jackson recognized Newsome's condition as constituting a serious medical need and requiring either an extraction or another root canal, Newsome has offered competent evidence that Jackson refused to perform either procedure, suggesting instead that Newsome obtain a root canal by an outside endodontist despite knowledge that he could not afford the procedure. A jury could reasonably infer that Dr. Jackson's outright denial of necessary treatment for a painful dental condition constituted deliberate indifference. Accordingly, given the existence of a genuine issue of material fact concerning the dental care Newsome received, Dr. Jackson is not entitled to summary judgment as a matter of law in this case.

## C.    Prison Health Services, Inc.

In joining the nurses' motion for summary judgment, PHS raises certain contentions that the Court has already addressed and rejected

above: i.e., that Newsome has offered no evidence that he had a "serious dental need" or suffered any "detrimental effect" as a result of the prison medical staff's conduct. (Doc. 67-3 at 13-14.) The Court thoroughly discussed its reasons for rejecting these contentions in the prior section addressing the nurses' and Dr. Jackson's summary judgment motions, and it will not repeat that discussion here. Suffice it to say that since Newsome has established the existence of a genuine issue of material fact as to the seriousness of his dental needs and as to whether the dental staff caused him to suffer needless pain, PHS is not entitled to summary judgment on these grounds.

PHS also contends that it is not responsible for any wrongful conduct of its employees, for "[t]he record is devoid of any evidence of an unconstitutional policy, practice or custom by PHS which was the moving force behind Plaintiff's asserted constitutional violations." (*Id.* at 18.) Since there can be no recovery under § 1983 upon a theory of respondeat superior,[16] PHS argues that there is no factual issue for the jury to decide,

---

[16] "When a private entity like PHS contracts with a county to provide medical services to inmates, . . . it becomes the functional equivalent of [a] municipality," *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997), and therefore qualifies as a "state actor" for § 1983 purposes. It is well settled that "[r]espondeat superior cannot be the basis for § 1983 liability." *Howell v. Evans*, 922 F.2d 712, 724 n.12 (11th Cir. 1991)

warranting summary judgment in its favor.

Newsome concedes that he must demonstrate either that PHS directly participated in the alleged constitutional deprivation by its employees or that there is some other causal connection between PHS' own acts or omissions and his injury and his injury. (Doc. 71 at 7.) He argues, however, that the evidentiary record establishes both that PHS supervisory officials were notified by his family that he was suffering severe pain as a result of not receiving adequate dental care at the Chatham County Jail and that PHS had an official "policy" and "practice" of requiring inmates to wait 30 days before seeing a dentist, a policy that contributed to his pain and suffering. (*Id.* at 7-8.)

In his amended complaint, Newsome asserted that PHS was "long aware" that he was suffering severe pain as a result of not receiving needed dental care, because his mother and a close family friend (at the behest of jail officials) complained directly "to the administration of the Prison

---

(citing *Monell v. Dep't of Soc. Servs.*, 36 U.S. 658 (1978)). Since municipal liability is restricted "to instances where the municipality actually caused the alleged deprivation of rights," *Buckner*, 116 F.3d at 453, Newsome is required to demonstrate either that PHS directly participated in the violation of his right to adequate medical care or that some policy or custom or custom of PHS led to the violation. *Id.*; *Howell*, 927 F.2d at 724 n.12; *Nelson v. Prison Health Servs., Inc.*, 991 F. Supp. 1452, 1465 (M.D. Fla. 1997).

Health Services, Inc." about "the neglect of their personnel." (Doc. 10 at 3; doc. 59 at 1-3.) Newsome repeats these assertions in his opposition to PHS' motion for summary judgment, where he indicates that his mother and a family friend contacted PHS supervisor "Ms. Linda Poole" regarding the jail's failure to treat his painful dental condition. (Doc. 71 at 7.) These assertions are supported by Newsome's declaration. (Newsome Decl. ¶¶ 33, 39 (where Newsome states that his mother and a family friend notified Linda Poole, administrator for PHS, about the pain and suffering he was forced to endure because of his unmet need for dental treatment).) Newsome also avers that the "30-day dental waiting list" policy contributed to the "pain and harm" he suffered. (*Id.* ¶ 36.)

At no point does PHS deny that a member of its administrative staff was contacted by Newsome's family and informed that he was in desperate need of treatment for his painful dental problems.[17] Nor does PHS deny the existence of a policy requiring the jail's nurses to simply record inmate requests for a dentist on a log, resulting in those inmates being seen by a dentist "in the order in which they are recorded." (Doc. 74, Ex. 18 (PHS'

---

[17] PHS' summary judgment motion does not include an affidavit from Ms. Poole.

Answer to Pl.'s Interrogs.) at 22.)   While PHS responds that dental "emergencies" (such as "trauma" or "severe bleeding") "will be seen on an emergent basis the day the request is made,"(*id.*), PHS seems to concede that some prisoners with painful but non-emergency dental conditions will be seen pursuant to their first-come-first-served policy, resulting in no attention by a dentist for 30 days. (*Id.* at 23-24 (noting that given the "high demand" for dental services at the jail, and the "limited" nature of the dental clinic, "there may be a 30-day wait between regular appointments.").)  As such a policy makes no distinction between the nature or severity of an inmate's dental needs, it will inevitably result in inmates with minor dental conditions (such as a small cavity causing no discomfort whatsoever) being seen a month before an inmate suffering far more significant dental problems (such as the painful cracked tooth, failed root canal, or periapical abscess experienced by Newsome).[18]

On a motion for summary judgment, all reasonable inferences from the evidence must be made in favor of the nonmoving party.  Reviewing the

---

[18] PHS acknowledges that its contract dentist works only 20 hours per week and that "[t]he inmate/detainee is financially responsible for non-emergent dental services." (Doc. 74, Ex. 18 at 24.)

record in this light, Newsome has demonstrated the existence of a genuine issue of material fact as to whether PHS' own official policy contributed to his injuries by forcing him to wait an extended period before seeing a dentist despite his severe pain, thereby causing him to needlessly suffer during the delay.[19]    Because a reasonable jury could find in favor of Newsome on this point, PHS is not entitled to summary judgment.

## IV.  CONCLUSION

Newsome has offered evidence that directly refutes defendants' account of the material facts in this case.   While that evidence may be suspect, at this stage of the proceedings the Court must accept Newsome's evidence as true.   *Farrow*, 320 F.3d at 1239 n.2 (recognizing that "the 'facts' for summary judgment purposes may not be the actual facts established at trial").   Construing the evidence in the light most favorable to Newsome, as the Court must do "in this summary judgment posture," *id.* at 1241 n.8, Newsome has demonstrated that a reasonable jury could find in his favor against each of the defendants.   Accordingly, defendants'

---

[19] Of course, to the extent that he complains that the delay caused further deterioration or worsening of his underlying medical problem, his claim fails, as he has not presented verifying medical evidence of causation establishing such a connection. *Hill*, 40 F.3d at 1188.

motions for summary judgment (docs. 67 & 68) should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this __7th__ day of April, 2009.

_[signature]_

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA